Nicholson, C. J.,
delivered the opinion of the Court.
*482 The questions of law involved in this case arise upon the following facts:
In May, 1860, Columbus Hurd, B. F. Marcum, and John Wilson, being in need of money to secure the completion of the building of a steamboat at Louisville, Ky., applied to E. M. Apperson & Co. to procure advancements for that purpose. They agreed to advance the amount needed upon their executing two notes- for $1,793.50 each, with D. C. Cross as surety. Accordingly the notes were executed on the 29th of May, 1860 — one payable at four and the other at eight months from date. These notes were delivered to Apperson & Co. as security for the loan to be made by them. The money was advanced on various •drafts afterwards by Hurd, Marcum & Wilson. Some time after the notes matured, Hurd, Marcum & Wilson executed another note to Apperson & Co. for about $4,600, payable June 1st, 1861. This note included the amount of the other two notes, as well as other advancements made, and interest. It was executed by Hurd, Marcum & Wilson, without security, and without the knowledge or consent of Cross, the surety on the other two notes, which were still retained by Ap-person & Co.
The note for $4,600 not being paid, Apperson, as surviving partner of Apperson & Co., filed his attachment bill in September, 1865, against Cross, as a nonresident, and had a lot of ground belonging to Cross, in Memphis, levied on to satisfy the two notes oi $1,793.50 each, on which Cross was surety.
Cross, in his answer, denies that he is liable on *483 the notes, and states, that after the notes matured, Apperson & Co., knowing that he was only a surety-on the notes, made an arrangement with Hurd, Mar-cum & "Wilson, by which they gave an extension of time, under such circumstances as released him from his liability as surety.
There can be no difficulty, at this day, as to the rule of law which governs in. such a case. Mr. Story lays it down with clearness and accuracy as follows:
“ If a creditor, without any communication with the surety and any assent on his part, should afterward enter into any new contract with the principal, inconsistent with the former contract, or should stipulate in a binding manner, upon a sufficient consideration, for further delay and postponement of the day of payment of the debt, that will operate in equity as a discharge of the surety:" 1 Story’s Eq., s. 326; Union Bank v. McClung, 9 Hum., 98.
To determine whether the rule here laid down is applicable to the present case, it becomes necessary that we have an accurate comprehension of the facts. It is clear that the two notes were executed in anticipation of and as security for advancements of money to be thereafter made. It is also clear that the money was advanced in pursuance of the contract, and that the notes were not paid at maturity. But the difficulty presents itself when we come to the contract under which the note of Hurd, Marcum & Wilson for $4,600 was executed. It is manifest that this note was not given upon any new consideration or loan of money, but upon precedent considerations. Hurd, in *484 his examination as a witness, says: “In 1861 I was called on by C. Deloach, one of the firm of E. M. Apperson & Co., to renew the notes. We, the purchasers (of the boat) went up and gave a note for the amount due on all the notes, including, as I now recollect, more than six per cent, interest, and in the note the time was extended so as to make the nfew note fall due the 1st of June, 1861. This settlement and the extension of time was made without the knowledge or assent of Cross.” The note for $4,600 was therefore given on “settlement” and renewal of the former notes, which were included in and constituted part of the $4,600 note. The witness adds: “We gave that note by agreement with Deloach, in order to extend the time, and to release my securities or endorsers. I asked Mr. Deloach for the old notes and checks, and he told me he would give me a receipt against them.” Witness was pretty certain that a receipt was given, which was destroyed with his other papers by fire in the burning of his safe, but of -this he was not positive. He stated that “ at the time the $4,600 was given the boat was lying at the Memphis wharf, in good running condition, and worth more than the debt.
Upon cross examination Hurd was asked: “Why did you not take up those other notes, if that was the intention and object of the note you executed?” He answered: “They would not give them to me.” He was asked: “Did they not tell you why they would not give them to you?” He answered: “They did — they told me they held them as security, but I *485 told Deloach he could not do that.” He was asked: ‘•Do you not know, from what passed between you and Deloach at that time, that he did not consider he was releasing or giving up the notes on which Cross was bound?” He answered: “I think he knew the notes were not bound — but he told me he would make it all right.”
Marcum was also examined as a witness, and his testimony corresponds substantially with that of Hurd.
From this evidence we can have no serious difficulty in comprehending the real character of the transaction. The notes on which Cross was surety, being past due, were evidently included in the settlement, and embraced in the $4,600 note. Apperson & Co., therefore held the two original notes of $1,793.50 each, with Cross as surety, and they held also the note of Hurd,, Marcum and Wilson, without Cross as surety, for the 'same debt, due June 1st, 1861. The new note for $4,600, included also other antecedent indebtedness of Hurd, Marcum and 'Wilson, amounting to about $1,000, besides interest. The case narrows itself down to the simple question: after taking the note for $4,600, and before it became due, had Apper-son & Co. the right to sue Hurd, Marcum and Wilson on the two notes of $1,793.50 each? By including these two notes in the $4,600 note, they had agreed to extend the time of payment on the two notes until the 1st of June, 1861. Was this agreement based on a sufficient consideration? Upon a suit by Apperson & Co., on the two notes of $1,793.50, before the maturity of the $4,600, could they have *486 maintained their right to sue, by alleging that there was no consideration for the delay given? Upon their demand, Hurd, Marcum and Wilson, with their boat lying at the Memphis wharf, come up and make a settlement. In that settlement they not only renew the two notes of $1,793.50, but they settle as to other transactions, ascertain the total amount due, count up the interest to the 1st of June, 1861, probably a larger interest than six per cent., and close the settlement by taking the note for $4,600, and agreeing to wait for payment until June 1st, 1861. It is immaterial whether the interest received into the note was legal or usurious, unless the illegality appeared on the face of the note. The note was not thereby made void. In the case of Union Bank v. McClung, 9 Hum., 98, Judge Turley held that the taking of legal interest on a note past due, the bank retaining the note, was evidence of an implied agreement for delay, which discharged the accommodation endorser. Here the agreement is not left to implication — it is evidenced by an actual renewal, receiving of interest; and as proved by Hurd, the agreement and renewal were made for the very purpose of discharging the surety. It is clear, that by the new agreement, the settlement of all their transactions, the renewal of the notes, and providing for past and future interest, Apperson & Co. tied their hands, so that they had no right then to sue upon the two notes of $1,793.50. As this arrangement and contract was made without the knowledge or approval of the surety, he was thereby discharged.
As this view of the case is conclusive, .we are re *487 lieved of the necessity of examining other views of it presented in the argument. The Chancellor held that the surety was discharged, and we affirm his decree with costs.